Good afternoon. Donald Horgan here for the petitioner and appellant Brian Shannon. I'd like to reserve two minutes, if I could, for rebuttal. The substantive issue in this case relates to the instructions read at Mr. Shannon's state criminal trial. The procedural issue relates to the timeliness of his habeas corpus petition, and on that point, the court has directed the parties to address the impact of the Supreme Court's recent decision in Johnson v. United States. Johnson reversed a federal circuit court decision that the state in this case has directly relied on in arguing that Shannon's petition was untimely. That case held that under AEDPA, a state court judgment that invalidates a state conviction used to enhance a sentence in a federal prosecution was a factual predicate for the claim brought under Section 2255. Counsel, it seems distinguishable to me. In Johnson, the importance of the state judicial decision is it changed the facts. He no longer has the recidivism history that the court based its sentence upon. Here, it's just a change in this Lasko case. It's just a change in the law. It's a general principle of law. It's not a change in the factual predicate for this individual. Why wouldn't that be a distinction that makes Johnson of no help to you? Well, because, Your Honor, in this instance, for two reasons, Your Honor. Johnson did hold that a state court judgment can – the judgment itself can constitute a fact. But beyond that, in this case, I think what it really comes down to is, was Shannon able to pursue this claim federally before – Well, I don't see why it comes down to that. He wasn't able to pursue it because there wasn't the violation of law at the time. It seems like what you're doing would be kind of a backdoor overturning of Teague. Any time there's a new rule, you have a new one-year statute of limitations that starts up when there's a new rule. Your Honor, I think that actually in Lasko, what the Supreme Court said, the state court decision in Lasko, was it wasn't announcing a new rule. What it was saying, what the California Supreme Court said in that case was it is the rule that voluntary manslaughter is compatible with the absence of intent to kill. And not only that, it has always been the rule. It has been the rule ever since the criminal law in California has existed. And the inferior state courts that have reached a contrary conclusion have been in misinterpreting the law. But it didn't announce a new rule. Quite to the contrary, it said that this was the rule not only as of 2000 when Lasko issued, but it was the rule at the time that the Supreme Court denied review in Shannon's case. Shannon absolutely could not have gone forward in the federal court prior to the time that Lasko issued. Well, he could have. There's nothing stopping him except he moves. Well, he could have filed the petition, but the federal courts would have been bound by the interpretation issued by the inferior court in Lasko's direct state appeal. And that's because when the California Supreme Court denied review on Shannon's direct appeal, and he had presented this issue squarely to the California Supreme Court, the Supreme Court denies review. And under West v. AT&T, a case we cited in our reply brief, the federal courts, when they are in the course of the same litigation and looking at a construction of state law, if there has been a denial of review as to the very issue raised in the federal litigation, and the federal court is trying to determine what is and what was state law at the time, they were bound by what the California Court of Appeal had said in Shannon's case. And that was as a result of the California Supreme Court's having denied review for Shannon. But does that mean he couldn't go forward? Well, it doesn't mean that he couldn't. Just because you lose, just because the law is against you, doesn't mean that you can't go forward, so the statute of limitations is there. Well, it's no different than if in Johnson the petitioner could have proceeded into federal court. He could have filed his petition, but he would have been foreclosed from any relief there. He's no less foreclosed than was the petitioner in Johnson as a result of the state court judgments. So I urge the court to look at the West v. AT&T case in the reply brief, because I think it has a very full discussion of that. I do submit, Your Honor, that the Lasko decision did more than announce a new rule. It really said that it had always been true for Shannon that his interpretation of state law was correct, but it was one that was never actionable. His claim never accrued, in fact, until the time of Lasko. What I would like us to do is interpret the principle that the statute of limitations is told when a person is prevented from going forward for some reason other than his own doing with his claim to include where he could go forward, but he would lose because the law is against him. It's more than that, Your Honor. It's an extremely unusual situation that we have here, that what happens is the state court later comes along and approves or recognizes the actionability of a claim not only at the time that that later decision issues, but at the time that the original challenge was made in state court. That's far from the usual situation. This does not open the floodgates to habeas corpus, because it's almost unimaginable that this kind of case is going to repeat itself. And this is the reason why we've made alternative arguments about, of course, the removal of a state impediment. I won't belabor those here. I think we've briefed those clearly. But under equitable tolling principles, it's equally true. These are extraordinary circumstances. Shannon did not have an actionable claim until Lasko issued. And the significance of Lasko is it confirmed and affirmed that Lasko, in fact, should have had, should have been able to proceed with his complaint about the state elements in 1996. Let me ask you about something else. As I recall, he was convicted of murder. That's correct, Your Honor. And what Lasko did was correct an error that the California courts were making in the manslaughter instruction. That's correct. Why isn't it entirely immaterial that he was, his jury was instructed in error on manslaughter, since the jury convicted him of murder, found all the elements of murder? So whether it was first-degree manslaughter, second-degree manslaughter that was instructed on wrongly, it just doesn't matter. Well, it does matter, Your Honor, because the most, the strongest implication of the evidence in this case was that this killing had occurred in the middle of a struggle. Mr. Shannon and Ms. The jury argument, if the jury wanted to let him off on manslaughter. Correct, Your Honor. But the reason that this is an error, an error of federal constitutional dimension, is because what the instructions told the jurors was that if you find the presence of an intent to kill, fine. Heat of passion can then dispel malice, knock it down to voluntary manslaughter. What they effectively told the jurors, however, was that if you find no intent to kill, and that was the most obvious conclusion that the jurors were going to reach, given the relationship, given all the evidence of provocation, maybe that she was going to leave him and so forth, that he didn't have an intent to kill. But what these instructions told the jurors was that if you think that this killing was an implied malice murder, in other words, you know, an intention. They must not have believed the guy. They must have thought he just made up a lie between when he shot her and when the cops came, based on the bruises or the neighbors saying they heard yelling or whatever, or else they couldn't have convicted him of murder. Your Honor, I respectfully disagree. I think the instructions told them that heat of passion did not matter in this circumstance. They declined to look at heat of passion or provocation. The reason is because the instruction that Shannon challenges here states that if there is not intent, if you, the jurors, if we have proven to you that we've got what is otherwise an implied malice murder, that heat of passion matters only if there is the intent to kill. Now, granted there are general statements of the law elsewhere about the incompatibility of malice with heat of passion, but the most specific situations in which that is addressed are the voluntary manslaughter instructions where the court tells the jurors, look, if you have an intentional killing or intentional killing. They even get to the manslaughter, though. I mean, it seems to me that what the argument is, if I'm not misunderstanding it, is the jury might have convicted him of a lesser offense had it been available to them, but because of the peculiar error that was made, the lesser offense was unavailable, so they had to either convict of the greater offense or else of a far lesser offense. But it seems to me that that argument fails based on harmless error because once they convicted him of the greater offense, it comes to nothing but an argument that the jury might have compromised. Well, Your Honor, what I'm getting at is that the reason that the murderer doesn't inspire any confidence and we can't say it's harmless is these instructions took heat of passion off the table for this defendant. The vast majority of the prosecutor's argument was not that this was an intentional killing. It was that it was a ñ I'm looking at the instructions rather than the arguments and the evidence to try to decide what the jury did. So if you could guide me through them. Yes, Your Honor, and this would be at supplemental excerpts at page 55. Every person who unlawfully kills another human being without malice of forethought but with an intent to kill is guilty of voluntary manslaughter. There's no malice of forethought if the killing occurred upon a sudden quarrel or heat of passion. In order to prove such a crime, each of the following elements must be proved. A human being was killed, the killing was unlawful, and the killing was done with the intent to kill. Now, as the prosecutor argued to the jury, you can't go there. You can't go to voluntary manslaughter. We don't have to disprove heat of passion if the killing was unintentional. Yes, we do have to disprove heat of passion if the killing was an intentional killing. But the circumstances of this crime indicated it hadn't been intentional at all. It was a crime, giving it the most sinister interpretation, at least that we can read from the jury's verdict, that he had done an act with conscious disregard of the consequences. Hold on. I'm looking at the instructions here. I'm looking at the excerpts of Record ER-13. The judge tells the jury that the distinction between murder and manslaughter is that murder requires malice while manslaughter does not. When the act causing the death is done in the heat of passion or is excited by a sudden quarrel, the offense is voluntary manslaughter. In such a case, even if the intent to kill exists, the law is that malice, which is an essential element of murder, is absent. So I'm thinking the jury must have just not bought the evidence of sudden quarrel and didn't mean to and that kind of thing. But, Your Honor, if what the prosecution had persuaded the jury was that this was not an intentional killing, unlike the instruction the Court just referred to, but an unintentional implied malice killing, you're doing a risky, a highly risky act, for instance, waving a gun at somebody or struggling over a gun or you've got a gun out and you're fighting with that gun, struggling for the gun, you're not intending to kill, but you're doing arguably an action that demonstrates a conscious disregard for human life. You're doing an act that is objectively dangerous to human life. But in that instance, this instruction, and also in particular the instruction I read earlier, tells the jurors that in those instances heat of passion does not dispel malice. Thank you, counsel. I've let you go way over time.  Thank you, Your Honor. We'll now hear from the government. Good afternoon, Your Honors. Juliet Haley, appearing for the warden. I want to just start by picking up on the argument regarding if we're going to look at the merits of this just briefly because I think that in understanding the merits, you'll see how Judge Jenkins got it right when he said that nothing, that the Lasko decision did not make or break petitioner's capacity to bring a federal claim to this court. And the reason that he came to that conclusion is that California law, like the case of Mulaney v. Wilbur, requires if there is a presence of heat of passion, if there's a presence of provocation, for the prosecution to disprove that in order to sustain a murder conviction. The jury was accurately instructed on that. That is just what was read, that you have to find, it's GALJEC 8.50. So that instruction was given to the jury. The jury was completely instructed on malice. That's petitioner's federal claim. His federal claim is not. Are we starting from the right place, or is there someplace else in the excerpts I should be looking? If you look at the supplemental excerpts provided by the State at page 67, the jury was told that the distinction between murder and manslaughter is that murder requires malice and manslaughter does not. And then it goes on to talk about if the act, although unlawful, is caused by the heat of passion or amounts to adequate provocation, the offense is voluntary manslaughter. In such a case, even if an intent to kill exists, this is exactly what you, I think, just read. To establish that a killing is murder and not manslaughter, the burden is on the people to prove beyond a reasonable doubt each of the elements of murder and that the act which caused death was not done in the heat of passion. So the jury was told this. Now, where petitioner's claim comes along and where Lasko error occurs is that he has a right under State law to have the jury accurately instructed on lesser offenses. And what he's relying on is that CalJIC 8.40 was wrong. It was determined by the Cal Supreme Court to not reflect the elements of voluntary manslaughter. And CalJIC 8.40 was found, Your Honor, at supplemental excerpts of record page 55. And this is where his claim of error rests. And so what he argues is that the presence of CalJIC 8.40 could have led the jury, notwithstanding CalJIC 8.50, to conclude that if he acted with implied malice and they found that he had adequate provocation in heat of passion, they would not, they would have still found him guilty of murder, notwithstanding 8.50. And what Judge Jenkins reasoned was that that claim had nothing to do with the Cal, if the Cal Supreme Court had said 8.40 is correct, he'd still have a federal claim because his claim is that the presence of 8.40, which seemed to limit heat of passion only to express malice killings, created this concern that he wasn't properly instructed on implied malice. So it's the presence of the instruction, not its correctness, that gives rise to this ambiguity. And Petitioner was always free to argue that in front of the federal courts, citing Mulaney. I mean, that's what Mulaney is. Mulaney, California parrots, the same burdens of proof that Mulaney had articulated, that the state bears the burden of proving the absence of heat of passion to establish a malice killing, other than felony murder. So that federal claim was always there. And that's what Judge Jenkins concluded. I mean, that was part of his conclusion. He went on, however, I mean, and so I want to point out to this Court that since the claim was always available, this Court need not even address whether the statute, whether 2244, also permits him, you know, to satisfy the statute of limitations. Because if he could always bring the claim, he would fall under the finality of the state court review process. And his year is clearly over by that point. If this Court disagrees with Judge Jenkins in the people's position that he could have always brought this federal claim, then we come to the question of whether he has any statutory, under any of the other provisions of 2244, the year does run at the LASCO decision. And I think that I couldn't have said it better that I think Johnson is distinguishable. Johnson, the high court, distinguishes this from 2244 better than I did in my briefs. But I think that the salient features is that Johnson is clearly driven by Custis and Daniels, which told defendants you can't challenge your state court convictions in the federal sentencing proceeding you have to go back to state court. If you're successful there, aside from Gideon error, you can come back here and that changes your sentence. And if they had construed, even though it was a difficult construction to find a state vacature order is a fact within the meaning of the statute, they were willing to do that because otherwise they had told the defendants you have this remedy, and yet the defendants, if they diligently pursue it, as soon as they get their federal sentence, go back to state court, there's no tolling provision in 2255 as there is under 2244 and 2254 generally, then the petitioners would do exactly as they're told and yet not have a remedy because they couldn't get through the state courts and get that vacature within a year. And I think upon reading the Johnson opinion, it's quite clear that they are talking about a specific situation, and namely 2255, and it's not applicable to 2254 or 2244 for the reasons that have already been discussed. Again, just talking a little bit, going back to the, if this Court is to reach the merits of this and reject the first two arguments, it's clearly that any error in failing to give a correct instruction on voluntary manslaughter was harmless in this case. Just looking at the facts of the case, this is a, you know, 89-pound woman, I believe, who was shot in the head, pressed against her forehead, one shot, so to conclude that there was no intent to kill, and the prosecutor did argue that there was intent to kill, is, I think, is ludicrous on the facts. And even if there was no intent to kill because the defense argument was accident, there's certainly no heat of passion, because heat of passion is not about, you know, a girlfriend wanting to leave her boyfriend, and that's adequate provocation to reduce your killing her from murder to manslaughter. If it was, every battered woman's case would be voluntary manslaughter by the aggrieved, you know, being left spouse. I don't want to say male in all cases, but, and that's not the law, and that's not the law of California. There's no evidence that he was acting in a heat of passion. So there's also, we would say, there's no evidence of adequate provocation. There's nothing to indicate what did she do to send a reasonable person into this kind of rage. And there's no evidence that he was in such a rage. He says it's an accident. That's what he tells the police. That's what he tells, it's a horrible mistake. That's what his defense counsel argues, accidental death or negligent firing. And the prosecution did, as Counselor points out, say that the jury couldn't do a voluntary manslaughter conviction because there was no, if they found there was no intent to kill. But he also told them that they had to find adequate provocation, and there was none here. So under the facts of this case, this instruction never came into play, and Petitioner, if anything, got a windfall, that the State was told that they had to prove an extra element of voluntary manslaughter that they didn't have to prove. Thank you, Counsel. Thank you. The case just argued will be submitted for decision, and we will hear argument in Nieblas v. Rimmer.
judges: Beezer, O'scannlain, Kleinfeld